**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| APW ENCLOSURE SYSTEMS, INC., | ) | Cases No. 06-11378(MFW) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Fourth and Final Application of Duane Morris LLP, Counsel to the Debtor, for Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period of December 4, 2006, through March 19, 2007 (the "Final Fee Application"). For the reasons stated below the Court will disallow in part the fees requested in the Final Fee Application, subject to the right of counsel to offer additional evidence to support payment of its fees.

I.   BACKGROUND

APW Enclosure Systems, Inc. (the "Debtor") filed for relief under chapter 11 of the Bankruptcy Code on December 4, 2006 (the "Petition Date"). Shortly before filing its petition the Debtor entered into a contract with AMF Anaheim LLC ("AMF"). Pursuant to that contract, AMF took over the Debtor's lease, the Debtor's

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

manufacturing operations, and many of the Debtor's employees. The Debtor's remaining employees were responsible for collecting the outstanding receivables and maintaining certain equipment. This equipment was sold in a liquidation sale on January 16, 2007.  On March 19, 2007, the case was converted to a chapter 7 case.

The Court approved the retention of Duane Morris LLP ("Counsel") as counsel for the Debtor on January 4, 2007, <u>nunc pro tunc</u> to the Petition Date.  Counsel filed its First and Second Interim Fee Applications on February 15, 2007, to which the United States Trustee ("UST") filed an objection on March 6, 2007.  Counsel filed a response to the UST's objection on March 12, 2007.  Counsel filed its Final Fee Application containing a total of four monthly fee applications on May 5, 2007, which sought fees of $340,958.00 and expenses of $21,416.61.  At the fee application hearing on May 23, 2007, the Court advised Counsel that it believed that the case was "not efficiently prosecuted" and that it expected to reduce the requested fees. The Court also advised Counsel that it would provide an opportunity to respond to the Court's decision at a future hearing.

II.  JURISDICTION

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 & 157(a).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

III. DISCUSSION

   A.   Court's Authority to Review Fee Applications

It is well established that a bankruptcy court has an independent obligation to review attorney's requests for compensation for services rendered.  In re Busy Beaver Bldg. Ctrs., 19 F.3d 833, 841 (3d Cir. 1994); In re Fleming Cos., 304 B.R. 85, 89 (D. Del. 2003); In re Angelika Films 57th, Inc., 227 B.R. 29, 42 (Bankr. S.D.N.Y. 1998); In re Spanjer Bros., Inc., 203 B.R. 85, 89 (Bankr. N.D. Ill. 1996).  Moreover, approval of fees is more than just a formality; the Code specifically states that reasonable compensation may be awarded by the court.  11 U.S.C. § 330(a)(1) (emphasis added).

This statutory obligation must be taken seriously by the courts due to the particularities of bankruptcy procedure.  The Third Circuit specifically noted the differences between statutory fee cases and bankruptcy cases.  Busy Beaver, 19 F.3d at 842-43.  In the former, the adversary system serves to ensure that fee requests are reasonable, whereas in the latter neither the debtor nor the attorneys for the creditors have an incentive

in the "club" atmosphere of the bankruptcy bar to raise objections to fee requests.  Id.  Thus, it is the bankruptcy court's obligation to "protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors."  Id. at 844.

If the court intends to reduce or disallow fees requested by professionals in a bankruptcy case, the court must grant the affected parties a hearing or, at a minimum, allow them to present evidence in order to address the court's concerns regarding the services performed.  See 11 U.S.C. §§ 329(b) & 330(a).  See also Busy Beaver, 19 F.3d at 846 (discussing the constitutional right under the Fifth Amendment of a good faith applicant to a hearing).  This allows a good faith applicant to remedy inadvertent deficiencies in its fee application.  Id.  See also Fleming, 304 B.R. at 90.  Interim fee awards are subject to adjustment until approval of the final fee application, even if the court did not raise any objections to the fees requested in interim fee applications.  Schwab v. SSG Capital Advisors, L.P. (In re Old Summit Mfg., LLC), 323 B.R. 151, 154 (Bankr. M.D. Pa. 2004); In re Mariner Post-Acute Network, Inc., 257 B.R. 723, 729 (Bankr. D. Del. 2000).

B.  Section 330

Courts must determine the reasonableness of compensation "based on (i) the nature of the services, (ii) the extent of the services, (iii) the value of the services, (iv) the time spent on the services, and (v) the cost of comparable services in non-bankruptcy cases." Busy Beaver, 19 F.3d at 840. On its own initiative, the court may "award compensation that is less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2). In particular, the "court shall not allow compensation for (i) unnecessary duplication of services; or (ii) services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A). The burden to show the value of the services provided rests with the applicant. Zolfo, Cooper & Co. v. Sunbeam-Oster Co., 50 F.3d 253, 261 (3d Cir. 1995); Spanjer Bros., 203 B.R. at 89-90.

Consistent with the Code's provisions, this Court has followed a two-tiered test to determine whether compensation should be allowed. Fleming, 304 B.R. at 90. "First the court must be satisfied that the attorney performed actual and necessary services. Second, the court must assess a reasonable value for those services." Id. at 90 (emphasis added).

1.  <u>Actual and Necessary Services</u>

Services are actual and necessary, and thus warrant compensation, if they benefitted the estate. <u>See</u> <u>Spanjer Bros.</u>, 203 B.R. at 90. Courts have struggled with determining the viewpoint from which to evaluate the potential benefit to the estate. At least one court has held that the applicant must show that an actual benefit was provided. <u>Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distribs., Inc.)</u>, 157 F.3d 414, 426 (5th Cir. 1998) (holding that the threshold for compensation is whether the services "resulted in an identifiable, tangible, and material benefit to the bankruptcy estate").

A majority of courts, however, have held that services are compensable if at the time the services were performed a benefit to the estate was likely. <u>See, e.g.</u>, <u>In re Ames Dep't Stores, Inc.</u>, 76 F.3d 66, 72 (2d Cir. 1996); <u>Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)</u>, 251 B.R. 103, 108 (B.A.P. 9th Cir. 2000) (finding that a plain reading of the statute supports the objective analysis of the benefit); <u>Reitmeyer v. Kirkpatrick & Lockhart, LLP (In re Am. Metallurgical Prods. Co.)</u>, 228 B.R. 146, 159 (Bankr. W.D. Pa. 1998) (finding that the majority standard is the "more well-reasoned approach"). <u>See also</u> <u>Ferrara & Hantman v. Alvarez (In re Engel)</u>, 124 F.3d 567, 575 n.23 (3d Cir. 1997) (denying fees after finding "neither

actual benefit to the estate, nor a reasonable likelihood of benefit to the estate"). Consequently, an attorney "should only proceed with a legal service if the potential benefit of the service, which takes into consideration the chances of success, outweighs the cost." Angelika Films, 227 B.R. at 42. See also Fleming, 304 B.R. at 89 (courts must perform an "objective inquiry based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances.") (internal citations omitted). A logical implication of this objective analysis is that incidental benefit to the estate does not necessarily justify compensation of services, especially if the services had a negligible likelihood of benefitting the estate at the time they were performed.

The majority view, which rejects the hindsight evaluation of services, recognizes that a successful reorganization is not necessary for compensation to be awarded. Keate v. Miller (In re Kohl), 95 F.3d 713, 714 (8th Cir. 1996); In re Collida, 270 B.R. 209, 241 (Bankr. S.D. Tex. 2001); In re Crown Oil, Inc., 257 B.R. 531, 541 (Bankr. D. Mont. 2000). Requiring a successful reorganization would deter lawyers from serving as counsel in reorganization cases where success is less than absolutely certain. See In re Maxine's, Inc., 304 B.R. 245, 248 (Bankr. D. Md. 2003).

The majority view also recognizes, however, that a more thorough examination of the services provided is required where the reorganization was more than doubtful, since counsel's efforts towards reorganization would be less likely to benefit the estate.  Keate, 95 F.3d at 714.  Therefore, an unsuccessful reorganization "may be taken into consideration in ascertaining the value of the legal services to the estate."  Angelika Films, 227 B.R. at 42.  Where reorganization is unlikely from the beginning, the value of attorney services may be negligible and fees should be reduced accordingly.  See Crown Oil, 257 B.R. at 541 (stating that competent counsel to debtors-in-possession should not face the risk of reduced fees if the reorganization fails, but "the fees of counsel are put at risk if the case does not have a reasonable calculated chance of resulting in a successful reorganization.").  See also Maxine's, 304 B.R. at 248; Collida, 270 B.R. at 214.

In this case, a thorough examination of Counsel's services is warranted, because the Debtor had an extremely low probability of achieving any feasible reorganization from the beginning of the case.  In fact the liquidation of the Debtor's assets and quick conversion to a chapter 7 case was a foregone conclusion.  On the Petition Date, the likelihood of a successful reorganization was at least questionable, if not impossible.  At the February 13th hearing, witnesses testified that by the

Petition Date the Debtor was winding down its operations and was moving toward a sale of its assets. It appears that this process began six months earlier, in July 2006, when the Debtor advised its employees that it was winding down its manufacturing operation after it lost its main customer, Sun Microsystems.

Applying an objective approach to the examination of the fees requested in this case raises questions about the potential benefit to the estate of the services rendered by Counsel in connection with the AMF contract and the auction procedure.

### a. AMF Contract

The AMF contract raised several questions in the Court's mind, which Counsel was unable to answer. The Court's concerns started when Counsel opined at the first day hearing that the AMF deal was "pretty close to a wash," meaning there was no monetary benefit to the estate. The AMF contract apparently released the Debtor from certain obligations and liabilities for its lease, manufacturing, and production in exchange for a payment of $100,000 by the Debtor to AMF. In turn AMF used the Debtor's remaining raw materials for free to finish certain products for the Debtor. The Debtor then "bought" these products from AMF at the same price at which it later sold them to its customers. The effect of the contract was that AMF was earning the Debtor's profits, while the Debtor shipped the products and collected the payments for AMF's benefit. In addition the existing trade

9

balance with AMF was canceled although the amount of the balance was never disclosed to the Court.

The Debtor retained the right to enter the facilities and conduct a sale of its assets, including the machines and equipment AMF was using. However, this right was restricted temporally: the sale had to be completed and all the machinery removed before February 28, 2007. This time constraint impeded the auction of the Debtor's assets.

Consequently, the circumstances surrounding the AMF contract raise a serious question whether work performed in connection to the AMF contract by Counsel was truly for the benefit of the estate. Moreover, because the Court was never asked to approve the AMF contract, the Court was never in a position to determine the potential benefit of the AMF contract to the estate. As a result, the Court cannot determine whether an experienced attorney in the same circumstances would have recommended that the AMF contract be assumed or rejected under section 365.

      b.   <u>Auction Procedure</u>

Although the Debtor had been working toward an auction of its assets since the Petition Date, Counsel did not seek approval of the auction procedure until <u>after</u> the auction was completed. This delay was improper and not likely to benefit the estate. While Counsel stated that the auction achieved a higher price for the assets than the Debtor had estimated, these valuations are

questionable because they were conducted informally by an employee, not an expert. Even if the auction resulted in a favorable result to the estate, a hindsight analysis is inappropriate to determine the necessity of a service because this benefit could have been incidental.

Counsel justified the retroactive request for approval of the auction on the extraordinary circumstances of the case. As noted, however, these circumstances were largely the result of time constraints placed on the Debtor by the AMF contract. This deadline became pressing after Counsel failed to obtain a stalking horse bidder early in the case and after the liquidators insisted on six weeks to prepare and sell the assets. The Court did approve the sale, in part because the Court was convinced that a reasonable value had been achieved and because neither the U.S. Trustee nor the Committee objected. However, the Court did express its concern that the procedure was improper.

        c.    <u>Disallowance of Compensation</u>

The Court questioned Counsel on both issues at several hearings, but Counsel was unable to alleviate the Court's concerns. Accordingly, the Court finds that Counsel failed to meet its initial burden of showing that the services relating to the expedited auction procedure and the AMF contract had a reasonable likelihood of benefitting the estate at the time they were performed. The failure to convince the Court of the

necessity of these services precludes approval of the associated fees for those services.  Thus, unless at a future hearing Counsel is able to convince the Court otherwise, the fees requested in connection with those services will be disallowed.

      2.   <u>Reasonable Value of Services</u>

Even if the court determines that a service was necessary, the court must still ascertain the reasonable value of the service.  11 U.S.C § 330(a)(3). <u>See also</u> <u>Fleming</u>, 304 B.R. at 90. The Code requires "the court to assess the quality of legal representation by evaluation of how effectively, how efficiently, and how professionally a case is prosecuted."  <u>Collida</u>, 270 B.R. at 214.  <u>See also</u> <u>Maxine's</u>, 304 B.R. at 248 ("The quality of the legal representation for which compensation is sought is always the most important consideration.").

In contrast to the necessity analysis of a service, the evaluation of the attorney's performance, i.e. the quality of representation, must be done in hindsight.  <u>See</u> <u>Maxine's</u>, 304 B.R. at 248; <u>Fulbright & Jaworski v. Sunbeam-Oster Co. (In re Allegheny Intern., Inc.)</u>, 139 B.R. 336, 343 (W.D. Pa. 1992); <u>In re Penn-Dixie Indus., Inc.</u>, 18 B.R. 834, 838-39 (Bankr. S.D.N.Y 1982).  The court should hold an attorney in a bankruptcy case to the same standards of representation as a client would hold the attorney in a non-bankruptcy case.  <u>See</u> <u>Busy Beaver</u>, 19 F.3d at 849-50 (noting that the legislative history of section 330

indicates that Congress intended the estate to be represented by the same quality of attorneys as in non-bankruptcy cases). This standard is also exemplified in the market rate approach courts apply to determine reasonableness of hourly rates for attorney services.  See, e.g., Busy Beaver, 19 F.3d at 854.

Courts have consistently reduced attorneys' fees for failure to meet the quality of representation expected of competent counsel.  For instance, fees have been reduced where counsel was so unprepared that her earlier efforts amounted to spinning wheels, resulting in the debtor failing to meet the deadline for filing a plan of reorganization.  Maxine's, 304 B.R. at 247-48. This Court has reduced fees where abysmal coordination and administration of the case lead to wasteful case management. Fleming, 304 B.R. at 92.  Similarly, reduction was warranted where debtor's counsel prevented the efficient administration of the case by failing to timely reject certain leases, which were effectively worthless to the estate after the debtor sold all its assets.  In re Net 2000 Commc'ns., Inc., 2004 WL 2249487, at *4 (Bankr. D. Del. 2004).  See also Spanjer Bros., 203 B.R. at 92 (stating that because counsel failed to assist the debtor in fulfilling its duties under section 521, it failed to promote the efficient administration of the case and thus a fee reduction was warranted).

In the present case, Counsel failed to meet the most basic standards of representation in a bankruptcy case, thereby casting doubt on the reasonable value of several of the services it rendered.  First, Counsel failed to promote the efficient administration of the case by being unprepared for the first day and later hearings.  Second, Counsel did not employ proper bankruptcy procedures.  Finally, Counsel showed general indifference toward the Court's concerns and questions by failing to address the Court's inquiries appropriately.  Counsel's only excuse for this lack of preparation and insufficient representation was the "fluid state" of the case.

The efficient administration of the case was inhibited by Counsel's lack of preparation.  In particular, the proposed budget, presented at the first day hearing, provided insufficient detail on wage payments, payments to AMF, retention bonuses, payment of accrued vacation time, rent payments at various facilities, and SG&A expenses.  Moreover, Counsel was unable to explain these budget items, because he was uninformed and thoroughly confused about the Debtor's accounting procedure for each of these line items.[2]  In effect, Counsel did not know what the Debtor was seeking authority to pay.  Additionally, Counsel did not want to, or could not, answer the Court's questions about

---

[2] Counsel was repeatedly corrected by the Debtor on these issues.

14

whether the secured lender's purported security interest in cash had been perfected under Article 9 of the Uniform Commercial Code, a fundamental principle faced in many bankruptcy cases.

This lack of preparedness was exacerbated by Counsel's lack of knowledge about procedural requirements.  For example, Counsel was not familiar with the proper procedure for obtaining authority to sell miscellaneous assets.  It filed a motion asking the Court to issue an order giving blanket approval to sell miscellaneous assets outside the ordinary course of business, without the necessity for notice and an order in each instance. While it might be excusable that Counsel was unaware of the procedural requirements of the Code and Rules when he filed the first motion, it is inexcusable that Counsel did not follow the proper procedure after the Court had instructed him on what was required.  Another example of Counsel's unfamiliarity with proper procedures was Counsel's filing of a "certification of counsel" which sought an order authorizing payment of funds to AMF, when no motion was pending.  The Court had to remind Counsel that it could only issue an order after either a motion or an adversary proceeding had been filed.

Counsel also knew, early in the case, that it would need to file a motion to sell the Debtor's assets, but failed to do so in a timely manner, resulting in the need to schedule an expedited hearing, thereby imposing unnecessary costs on the other parties

15

to the detriment of the estate.  Further, the motion to sell the assets sought <u>nunc pro tunc</u> approval of the bid procedures <u>after</u> the sale had occurred.  Thus, if the use of this improper procedure does not justify disallowance of fees for these services <u>in toto</u>, it at least raises a question about the reasonable value of those services.

Finally, the general conduct of Counsel showed indifference to the Court's questions and concerns.  Counsel often gave evasive answers to questions and at times even changed the subject to avoid answering questions posed.  It was only after prodding by the Court that some of its questions were answered.  This behavior was not limited to the Court.  Many times other parties had to correct Counsel that their lack of objections did not amount to a mutual agreement with the Debtor's position.

As a result, the Court will reduce the fees requested by Counsel for services related to preparation for the first day hearing, the motion to sell miscellaneous assets, and the attempt to have the Court issue an order to remit funds to AMF under certification of counsel.  Regarding the services performed in connection with the expedited auction procedure, in the event Counsel meets its burden concerning the necessity these services, the Court will nevertheless reduce the requested fees, because they did not promote the efficient administration of the case.

IV.  CONCLUSION

For the reasons stated above the Court will disallow fees requested by Counsel in the total amount of $51,217.50 as detailed in the table attached as Exhibit A to the Order accompanying this Opinion.

An appropriate Order is attached.

BY THE COURT:

Dated: August 2, 2007

_____
Mary F. Walrath
United States Bankruptcy Judge