## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:                          )    Chapter 7
                                )
APW ENCLOSURE SYSTEMS, INC.,    )    Cases No. 06-11378(MFW)
                                )
            Debtor.             )
                                )
                                )

### MEMORANDUM OPINION[1]

Before the Court is the Motion to Reconsider the Opinion and
Order entered on August 2, 2007, disallowing in part the Fourth
and Final Application of Duane Morris LLP, Counsel to the Debtor,
for Compensation for Services Rendered and Reimbursement of
Expenses Incurred for the Period of December 4, 2006, through
March 19, 2007 (the "Final Fee Application").  At the hearing
held on September 5, 2007, the Court granted the Motion and
vacated its decision.  This Opinion explains the Court's
reasoning and determines the final allowance of fees and expenses
requested by Counsel.


I.   BACKGROUND

APW Enclosure Systems, Inc. (the "Debtor") filed for relief
under chapter 11 of the Bankruptcy Code on December 4, 2006 (the
"Petition Date").  Shortly before filing its petition the Debtor

---

[1]  This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Federal Rule of
Bankruptcy Procedure 7052, which is made applicable to contested
matters by Federal Rule of Bankruptcy Procedure 9014.

entered into a contract with AMF Anaheim LLC ("AMF").  Pursuant to that contract, AMF assumed the Debtor's lease, the Debtor's manufacturing operations, and many of the Debtor's employees. The Debtor's remaining employees were responsible for collecting the outstanding receivables and maintaining certain equipment. After the bankruptcy case was filed, the Debtor sold its equipment and other remaining assets in a liquidation sale on January 16, 2007.  On March 19, 2007, the case was converted to a chapter 7 case.

The Court approved the retention of Duane Morris LLP ("Counsel") as counsel for the Debtor on January 4, 2007, <u>nunc pro tunc</u> to the Petition Date.  Counsel filed its First and Second Interim Fee Applications on February 15, 2007, to which the United States Trustee ("UST") filed an objection on March 6, 2007.  Counsel filed a response to the UST's objection on March 12, 2007.  On May 5, 2007, Counsel filed its Final Fee Application which contained four monthly fee applications and sought fees of $340,985 and expenses of $21,416.61.  At the fee hearing on May 23, 2007, the Court advised Counsel that it believed that the case was "not efficiently prosecuted" and that it expected to reduce the requested fees.  The Court also advised Counsel that it would provide an opportunity to respond to the Court's decision at a future hearing.  The Court's preliminary ruling (which disallowed fees in the amount of $51,217.50) was

encompassed in a Memorandum Opinion[2] dated August 2, 2007.  The
Court permitted Counsel to request a further hearing to present
evidence regarding the preliminary disallowances identified by
the Court as appropriate.

Counsel filed a Motion for Reconsideration and sought the
opportunity to present evidence not only on the necessity of the
services rendered and reasonableness of the fees that had been
disallowed, but also on the general conclusions the Court had
reached regarding the effectiveness and activities of Counsel in
this case.  At the hearing held on September 5, 2007, such
evidence was presented.  This matter is ripe for decision.


II.  <u>JURISDICTION</u>

This Court has subject matter jurisdiction over this matter
pursuant to 28 U.S.C. §§ 1334 & 157(a).  This matter is a core
proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).


III. <u>DISCUSSION</u>

A.   <u>Court's Authority to Review Fee Applications</u>

It is well established that a bankruptcy court has an
independent obligation to review attorney's requests for

---

[2]  Memorandum Opinions are intended only to decide the
issues between the parties before the Court and are not generally
considered by it to be of general importance or precedential.
Although the Court does not send Memorandum Opinions to legal
publishers for publication, they often are nonetheless published.

compensation for services rendered.  In re Busy Beaver Bldg.
Ctrs., 19 F.3d 833, 841 (3d Cir. 1994); In re Fleming Cos., 304
B.R. 85, 89 (D. Del. 2003); In re Angelika Films 57th, Inc., 227
B.R. 29, 42 (Bankr. S.D.N.Y. 1998); In re Spanjer Bros., Inc.,
203 B.R. 85, 89 (Bankr. N.D. Ill. 1996).  Moreover, approval of
fees is more than just a formality; the Code specifically states
that professionals are entitled to reasonable compensation only
as may be awarded by the court.  11 U.S.C. § 330(a)(1).

This statutory obligation must be taken seriously by the
courts due to the particularities of bankruptcy procedure.  The
Third Circuit specifically noted the differences between
statutory fee cases and bankruptcy cases.  Busy Beaver, 19 F.3d
at 842-43.  In the former, the adversary system serves to ensure
that fee requests are reasonable, whereas in the latter neither
the debtor nor the attorneys for the creditors have an incentive
in the "club" atmosphere of the bankruptcy bar to raise
objections to fee requests.  Id.  Thus, it is the bankruptcy
court's obligation to "protect the estate, lest overreaching
attorneys or other professionals drain it of wealth which by
right should inure to the benefit of unsecured creditors."  Id.
at 844.

If the court intends to reduce or disallow fees requested by
professionals in a bankruptcy case, the court must grant the
affected parties a hearing or, at a minimum, allow them to
present evidence in order to address the court's concerns

4

regarding the services performed.  See 11 U.S.C. §§ 329(b) &
330(a).  See also Busy Beaver, 19 F.3d at 846 (discussing the
constitutional right under the Fifth Amendment of an applicant to
a hearing).  This allows an applicant to remedy inadvertent
deficiencies in its fee application.  Id.  See also Fleming, 304
B.R. at 90.  Interim fee awards are subject to adjustment until
approval of the final fee application, even if the court did not
raise any objections to the fees requested in interim fee
applications.  Schwab v. SSG Capital Advisors, L.P. (In re Old
Summit Mfg., LLC), 323 B.R. 151, 154 (Bankr. M.D. Pa. 2004); In
re Mariner Post-Acute Network, Inc., 257 B.R. 723, 729 (Bankr. D.
Del. 2000).

    B.   Section 330

Courts must determine the reasonableness of compensation
"based on (i) the nature of the services, (ii) the extent of the
services, (iii) the value of the services, (iv) the time spent on
the services, and (v) the cost of comparable services in non-
bankruptcy cases."  Busy Beaver, 19 F.3d at 840.  On its own
initiative, the court may "award compensation that is less than
the amount of compensation that is requested."  11 U.S.C. §
330(a)(2).  In particular, the "court shall not allow
compensation for (i) unnecessary duplication of services; or (ii)
services that were not (I) reasonably likely to benefit the
debtor's estate; or (II) necessary to the administration of the
case."  11 U.S.C. § 330(a)(4)(A).  The burden to show the value

5

of the services provided rests with the applicant.  Zolfo, Cooper
& Co. v. Sunbeam-Oster Co., 50 F.3d 253, 261 (3d Cir. 1995);
Spanjer Bros., 203 B.R. at 89-90.

Consistent with the Code's provisions, this Court has
followed a two-tiered test to determine whether compensation
should be allowed.  Fleming, 304 B.R. at 90.  "First the court
must be satisfied that the attorney performed actual and
necessary services.  Second, the court must assess a reasonable
value for those services."  Id. at 90 (emphasis added).

1.   Actual and Necessary Services

Services are actual and necessary, and thus warrant
compensation, if they benefitted the estate.  See Spanjer Bros.,
203 B.R. at 90.  Courts have struggled with determining the
viewpoint from which to evaluate the potential benefit to the
estate.  At least one court has held that the applicant must show
that an actual benefit was provided.  Andrews & Kurth L.L.P. v.
Family Snacks, Inc. (In re Pro-Snax Distribs., Inc.), 157 F.3d
414, 426 (5th Cir. 1998) (holding that the threshold for
compensation is whether the services "resulted in an
identifiable, tangible, and material benefit to the bankruptcy
estate").

A majority of courts, however, have held that services are
compensable if at the time the services were performed a benefit
to the estate was likely.  See, e.g., In re Ames Dep't Stores,
Inc., 76 F.3d 66, 72 (2d Cir. 1996); Roberts, Sheridan & Kotel,

6

P.C. v. Bergen Brunswig Drug Co. (In re Mednet), 251 B.R. 103,
108 (B.A.P. 9th Cir. 2000) (finding that a plain reading of the
statute supports the objective analysis of the benefit);
Reitmeyer v. Kirkpatrick & Lockhart, LLP (In re Am. Metallurgical
Prods. Co.), 228 B.R. 146, 159 (Bankr. W.D. Pa. 1998) (finding
that the majority standard is the "more well-reasoned approach").
See also Ferrara & Hantman v. Alvarez (In re Engel), 124 F.3d
567, 575 n.23 (3d Cir. 1997) (denying fees after finding "neither
actual benefit to the estate, nor a reasonable likelihood of
benefit to the estate").  Consequently, an attorney "should only
proceed with a legal service if the potential benefit of the
service, which takes into consideration the chances of success,
outweighs the cost."  Angelika Films, 227 B.R. at 42.  See also
Fleming, 304 B.R. at 89 (courts must perform an "objective
inquiry based upon what services a reasonable lawyer or legal
firm would have performed in the same circumstances") (internal
citations omitted).  A logical implication of this objective
analysis is that incidental benefit to the estate does not
necessarily justify compensation of services, especially if the
services had a negligible likelihood of benefitting the estate at
the time they were performed.

The majority view, which rejects the hindsight evaluation of
services, recognizes that a successful reorganization is not
necessary for compensation to be awarded.  Keate v. Miller (In re
Kohl), 95 F.3d 713, 714 (8th Cir. 1996); In re Collida, 270 B.R.

209, 241 (Bankr. S.D. Tex. 2001); In re Crown Oil, Inc., 257 B.R. 531, 541 (Bankr. D. Mont. 2000).  Requiring a successful reorganization would deter lawyers from serving as counsel in reorganization cases where success is less than absolutely certain.  See In re Maxine's, Inc., 304 B.R. 245, 248 (Bankr. D. Md. 2003).

The majority view also recognizes, however, that a more thorough examination of the services provided is required where the reorganization was more than doubtful, since counsel's efforts towards reorganization would be less likely to benefit the estate.  Keate, 95 F.3d at 714.  Therefore, an unsuccessful reorganization "may be taken into consideration in ascertaining the value of legal services to the estate."  Angelika Films, 227 B.R. at 42.  Where reorganization is unlikely from the beginning, the value of attorney services may be negligible and fees should be reduced accordingly.  See Crown Oil, 257 B.R. at 541 (stating that competent counsel to debtors-in-possession should not face the risk of reduced fees if the reorganization fails, but the fees of counsel are put at risk if the case does not have a reasonable calculated chance of resulting in a successful reorganization).  See also Maxine's, 304 B.R. at 248; Collida, 270 B.R. at 214.

2.   Reasonable Value of Services

Even if the court determines that a service was necessary, the court must still ascertain the reasonable value of the

service.  11 U.S.C. § 330(a)(3). <u>See also</u> <u>Fleming</u>, 304 B.R. at
90.  The Code requires "the court to assess the quality of legal
representation by evaluation of how effectively, how efficiently,
and how professionally a case is prosecuted." <u>Collida</u>, 270 B.R.
at 214.  <u>See also</u> <u>Maxine's</u>, 304 B.R. at 248 ("The quality of the
legal representation for which compensation is sought is always
the most important consideration.").

In contrast to the necessity analysis of a service, the
evaluation of the attorney's performance, i.e. the quality of
representation, must be done in hindsight.  <u>See</u> <u>Maxine's</u>, 304
B.R. at 248; <u>Fulbright & Jaworski v. Sunbeam-Oster Co. (In re</u>
<u>Allegheny Intern., Inc.)</u>, 139 B.R. 336, 343 (W.D. Pa. 1992); <u>In</u>
<u>re Penn-Dixie Indus., Inc.</u>, 18 B.R. 834, 838-39 (Bankr. S.D.N.Y.
1982).  The court should hold an attorney in a bankruptcy case to
the same standards of representation as a client would hold the
attorney in a non-bankruptcy case.  <u>See</u> <u>Busy Beaver</u>, 19 F.3d at
849-50 (noting that the legislative history of section 330
indicates that Congress intended the estate to be represented by
the same quality of attorneys as in non-bankruptcy cases).  This
standard is also exemplified in the market rate approach courts
apply to determine reasonableness of hourly rates for attorney
services.  <u>See, e.g.</u>, <u>Busy Beaver</u>, 19 F.3d at 854.

Courts have consistently reduced attorneys' fees for failure
to meet the quality of representation expected of competent
counsel.  For instance, fees have been reduced where counsel was

so unprepared that her earlier efforts amounted to spinning
wheels, resulting in the debtor failing to meet the deadline for
filing a plan of reorganization.  <u>Maxine's</u>, 304 B.R. at 247-48.
This Court has reduced fees where abysmal coordination and
administration of the case led to wasteful case management.
<u>Fleming</u>, 304 B.R. at 92.  Similarly, reduction was warranted
where debtor's counsel prevented the efficient administration of
the case by failing to reject certain leases, which were
effectively worthless to the estate after the debtor had sold all
its assets.  <u>In re Net 2000 Commc'ns., Inc.</u>, 2004 WL 2249487, at
*4 (Bankr. D. Del. 2004).  <u>See also</u> <u>Spanjer Bros.</u>, 203 B.R. at 92
(stating that because counsel failed to assist the debtor in
fulfilling its duties under section 521, it failed to promote the
efficient administration of the case and thus a fee reduction was
warranted).

     C.   <u>Application to this Case</u>

     In this case, a thorough examination of Counsel's services
is warranted, because the Debtor had an extremely low probability
of achieving any feasible reorganization from the beginning of
the case.  On the Petition Date, the likelihood of a successful
reorganization was at least questionable, if not impossible.  At
the February 13th hearing, witnesses testified that by the
Petition Date the Debtor was winding down its operations and was
moving toward a sale of its assets.  This process had begun six
months earlier, in July 2006, when the Debtor advised its

employees that it had lost its main customer, Sun Microsystems. Thus, the liquidation of the Debtor's assets and quick conversion to a chapter 7 case was a foregone conclusion.

In its preliminary ruling, the Court questioned the potential benefit to the estate of services rendered by Counsel in connection with the AMF contract and the auction procedure. In its Reconsideration Motion, Counsel objected to the tenor of the Court's preliminary ruling which it felt suggested that the actions taken by Counsel were in bad faith.  The Court did not mean to suggest that it felt any actions were done in bad faith; rather the Court believes that the failure in this case was one of effective communication with the Court, not lack of good faith.

1.  <u>AMF Contract</u>

The Court raised several questions about the AMF contract at numerous hearings, none of which Counsel answered to the Court's satisfaction until the hearing on the Reconsideration Motion.  At that time, Counsel explained that the AMF contract resulted in (1) the Debtor selling its inventory at cost (as opposed to an expected loss if it were to be liquidated in the bankruptcy case), (2) AMF satisfying outstanding orders from the Debtor's customers which facilitated the Debtor collecting outstanding receivables, (3) AMF assuming the costs of operating the Debtor's plant until the orders were completed in exchange for a payment of $100,000 by the Debtor to AMF, and (4) the parties canceling

claims between them.[3]

Based on that evidence, the Court is convinced that, on
balance, the services rendered in connection with the AMF
contract did provide a benefit to the estate and were reasonable.

2.  <u>Auction Procedure</u>

Although the Debtor had been working toward an auction of
its assets from the Petition Date, Counsel did not seek approval
of the auction procedure until <u>after</u> the auction was completed.
At the hearing on the Reconsideration Motion, Counsel admitted
that it was contemplated from the start that a sale of the
Debtor's assets would have to occur.  Counsel stated it did not
file any motion for approval of bid procedures because of time
constraints placed on the Debtor by the AMF contract.  This
deadline became pressing after Counsel failed to obtain a
stalking horse bidder early in the case and after the liquidators
who were bidding on the assets insisted on six weeks to prepare
and sell the assets.  Although Counsel admitted that it tried to
take a shortcut to get the sale accomplished, it argued that the
result was a positive one: the auction achieved a higher price
(approximately $3.6 million) for the assets than the Debtor had
estimated based on its pre-petition valuations ($2.5 to $2.9
million).  Counsel stated that there were several bidders and
none refused to bid because there were no formal bid procedures

_____

[3]  At that time, AMF owed approximately $112,000 to the
Debtor, while the Debtor owed AMF approximately $464,000.

approved.

On cross examination by the UST, Counsel admitted that the UST had advised Counsel in January that it had a problem with the procedures Counsel was using and urged it to file the bid procedures motion as soon as possible. (Ex. T-1.) Counsel did not do so until after the auction occurred. The Court did approve the sale, nonetheless, because the Court was convinced that a reasonable value had been achieved and neither the UST nor the Committee objected. However, the Court did express its concern that the procedure was improper.

The Court is still disturbed by the failure of Counsel to give notice and obtain approval of the sale procedures in advance of the auction. Shortcuts are rarely justified and in this particular case the Court finds no reason for Counsel to ignore the sale procedures which have long been followed in this District. The fact that there was no stalking horse does not obviate the need to have notice and approval of the sale procedures. The Court is particularly concerned that the UST, the creditors, potential bidders, and other parties in interest did not have an opportunity to know what the sale procedures were or to object to them. While the Court believes that Counsel acted in a good faith effort to maximize the value of the assets and found no objection to the auction procedures actually used in this case, the failure to have those procedures approved in advance does mandate a reduction in Counsel's fees for this task.

13

See, e.g., Fleming, 304 B.R. at 94-96 (finding that failure to follow Bankruptcy Rules and proper procedures mandated reduction in fees).  The Court takes seriously its role in assuring that all procedures followed in cases before it be fair and transparent. The Court does not want to see a practice develop where the "exigencies" of a case are used to justify ignoring the proper procedures or not providing the Court and interested parties with notice and an opportunity to be heard on the procedures which the Debtor is using.  Consequently, the Court will disallow fees totaling $37,097 for the work done on this task.

> 3.   Miscellaneous

In the preliminary ruling, the Court also advised Counsel of miscellaneous matters which the Court found warranted reduction in fees totaling $8,965 or approximately half the fees requested for those services.  After hearing the evidence, the Court is convinced that the fee reduction should stand.  As noted above, however, the Court does not find any intent by Counsel to deceive the Court or other parties but simply a failure to communicate effectively with the Court and lack of attention to detail.


IV.  CONCLUSION

For the reasons stated above the Court will disallow fees requested by Counsel in the total amount of $46,062 as detailed above.

An appropriate Order is attached.


Dated: October 23, 2007                    BY THE COURT:

                                           Mary F. Walrath
                                           United States Bankruptcy Judge